IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jack G. Willhoit, III, | C/A No. 0:12-3021-TMC-PJG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Jack G. Willhoit, III, ("Willhoit"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

In July 2008, Willhoit applied for DIB and SSI, alleging disability beginning April 1, 2008. Willhoit's applications were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on October 19, 2010, at which Willhoit, who was represented by Nicholas G. Callas, Esquire, appeared and testified. The ALJ

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



issued a decision on November 18, 2010 denying benefits and concluding that Willhoit was not disabled. (Tr. 10-21.)

Willhoit was born in 1982 and was twenty-six years old at the time of his alleged disability onset date. (Tr. 31.) He has a high school education and past relevant work experience as a printer/sales person. (Tr. 157, 166.) In his application, Willhoit alleged disability since April 1, 2008[2] due to "bi polar, personality disorders, and self mu[til]ate, schizophrenia." (Tr. 156.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since April 1, 2008, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: depression, personality disorder, impulse control disorder, substance abuse, and obesity (20 CFR 404.1520(c) and 416.920(c)).
\* \* \*

4. The claimant's impairments, including the substance use disorder, meet sections 12.04, 12.08, and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).
\* \* \*

5. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

6. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).
\* \* \*

---

[2] Although Willhoit's brief in support of his appeal states that he should be found disabled since April 7, 2000, this appears to be a typographical error. (See Pl.'s Br. at 2, ECF No. 13 at 2.)



    7.      If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to occasional crawling; restricted to a quiet background; limited to unskilled work; with no required interaction with the public and only occasional "team-type" interaction with co-workers; in a supervised area.

                        \*   \*   \*

    8.      If the claimant stopped the substance use, the claimant would be unable to perform past relevant work (20 CFR 404.1565 and 416.965).

                        \*   \*   \*

    9.      The claimant was born . . . [in] 1982, and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963)

    10.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

    11.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    12.     If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

                        \*   \*   \*

    13.     Because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g) and 416.920(g)), the claimant's substance use disorder is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. 12-21.) The Appeals Council denied Willhoit's request for review on August 23, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)  whether the claimant is engaged in substantial gainful activity;

(2)  whether the claimant has a "severe" impairment;

(3)  whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)  whether the claimant can perform his past relevant work; and

(5)  whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[3]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner

---

[3] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUES**

Willhoit alleges that "the ALJ's decision contains numerous errors of law and is not supported by substantial evidence" in that it (1) "improperly concluded continued substance abuse"; and (2) "failed to give controlling weight to treating source providers." (Pl.'s Br., ECF No. 13.)

**DISCUSSION**

**A.     Dr. William Bragdon**

The crux of Willhoit's arguments on appeal is that the ALJ's decision is not supported by substantial evidence and controlled by an error of law because the ALJ erred in finding that Willhoit continued to improperly use prescription medications or unlawful substances after February 2009. In support of this argument, Willhoit contends that the ALJ misconstrued positive drug tests from May 2010 until September 2010, which Willhoit alleges were the result of prescribed medications. Willhoit argues that due to the alleged misinterpretation of the drug tests, the ALJ's decision to give little weight to Willhoit's treating psychiatrist, Dr. William Bragdon, is unsupported by substantial evidence and in violation of controlling law.

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and



(5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

Dr. Bragdon issued two opinions: a medical source statement dated April 21, 2010 and a questionnaire dated June 9, 2010. (Tr. 755-58.) The ALJ summarized these opinions as indicating the following:

> Dr. Bragdon has indicated that the claimant has been diagnosed with bipolar disorder, posttraumatic stress disorder, attention deficit/hyperactivity disorder, personality disorder, and that he has been treating him for these problems for the past 1 3/4 years. He has rated the claimant as having a poor ability to relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stresses, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. Dr. Bragdon has rated the claimant as having good ability to understand, remember, and carry out simple job instructions. Dr. Bragdon has indicated that it is his opinion that the claimant is totally disabled from all employment at this time due to psychological problems regardless of whether he has used illicit substances in the past or has abused the use of his prescription medication.

(Tr. 18-19.) The ALJ gave Dr. Bragdon's opinions little weight because she found that they are not supported by the medical evidence, which is an acceptable reason under applicable law.[4] See 20 C.F.R. §§ 404.1527(c), 416.927(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should

---

[4] Further, opinions that a claimant is disabled or unable to work are reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).



be accorded significantly less weight") (internal quotation marks and citation omitted). Specifically, the ALJ found,

> [t]he longitudinal record, which spans several years, shows a clear and distinct causal relationship between the claimant's substance abuse and his mental symptoms. As discussed throughout this decision, each time that the claimant has been hospitalized for an escalation of mental symptoms, he has admitted to ongoing substance abuse. During these many hospitalizations, when the claimant does not have access to drugs, he has favorably responded to treatment without exception.

(Tr. 19); (see also Tr. 16-18) (summarizing Willhoit's medical records and observing that Willhoit's hospitalizations demonstrate that "his mental conditions tremendously improve and his symptoms are significantly reduced when he does not have access to substances").

Willhoit does not specifically challenge any of the reasons offered by the ALJ in discounting Dr. Bragdon's opinion. Rather, he argues that because of the incorrect interpretation of drug tests, the ALJ chose to give little weight to Dr. Bragdon's opinions. Willhoit also summarily argues that the ALJ "improperly substituted her own judgment for competent medical opinion" and that "the ALJ's Decision is not based on substantial evidence and violates SSR 96-2p and 96-6p."[5]  (Pl.'s Br. at 10, ECF No. 13 at 10.)

---

[5] The stated purpose of SSR 96-2p is to "explain terms used in our regulations on evaluating medical opinions concerning when treating source medical opinions are entitled to controlling weight, and to clarify how the policy is applied"; while SSR 96-6p states its purpose is to clarify the agency's policy in considering findings of fact by state agency medical and psychological consultants and other program physicians and psychologists and discussing ALJ and Appeals Council responsibility for obtaining opinions of physicians or psychologists designated by the Commissioner regarding Listing equivalence.



In light of the foregoing, and upon thorough review of the record as a whole, the ALJ's opinions, and the parties' briefs, the court finds that Willhoit has failed to establish that the ALJ's decision with regard to Dr. Bragdon's opinions is unsupported by substantial evidence.[6]

**B.     Other Issues**

The Commissioner appears to have construed Willhoit's brief as also challenging the ALJ's credibility determination. The court has not construed Willhoit's brief as raising such an issue. To the extent that Willhoit intended to challenge the ALJ's evaluation of his credibility, the court finds that he has failed to demonstrate any error for the reasons articulated in the Commissioner's brief. (See Def.' Br. at 13-15, ECF No. 15 at 13-15.) Specifically, even assuming without deciding that the ALJ erred in finding that Willhoit's positive drug tests from 2010 refuted his testimony that he had been sober for eight months, the ALJ's evaluation remains supported by substantial evidence as this was but one factor out of many relevant factors that the ALJ considered. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (discussing the relevant factors that the Commissioner will consider evaluating subjective complaints); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (discussing the credibility evaluation process); SSR 96-7p (clarifying the credibility evaluation process; explaining the factors to be considered, and stating the importance of explaining the reasons for the credibility finding); see also Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases).

---

[6] The court observes that upon review of the decision, the ALJ does not appear to have discounted Dr. Bragdon's opinions based on her finding that Willhoit had tested positive for drugs in 2010. However, to the extent that she did and assuming without deciding that such a finding was error, Willhoit has nonetheless fail to demonstrate that the remaining reasons relied on by the ALJ are unsupported by substantial evidence or controlled by an error of law.



**RECOMMENDATION**

For the foregoing reasons, the court finds that Willhoit has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 17, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).